## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RONALD C. JOHNSON,                                    CASE NO. 2:20-cv-10147

       *Plaintiff,*                                       HON. GERSHWIN A. DRAIN
*v.*                                                          DISTRICT JUDGE

JEFFREY BLESSMAN,                                     HON. PATRICIA T. MORRIS
RICKY COLEMAN,                                        MAGISTRATE JUDGE
LIA GULICK,
MARI KAY SHERRY,
JULIANNE MARTINO,
STACY SYLVIE,
PATRICIA SCHMIDT,
and        PAIN        MANAGEMENT
COMMITEE,[1]

       *Defendants.*[2]
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 26, 31, 40) AND PLAINTIFF'S MOTION FOR IMMEDIATE CONSIDERATION (ECF No. 20)

## I.    RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants

Coleman, Martino, Schmidt, and Sylvie's motion for summary judgment (ECF Nos. 26),

grant Defendants Blessman and McIntyre's motion for summary judgment (ECF No. 31),

and **DENY** Defendants Gulick and Sherry's motion for summary judgment (ECF No. 40).

---

[1] The undersigned recognizes that the Pain Management Committee is misspelled in the docket as the "Pain Management Commitee."
[2] Defendants Heidi Washington, Willis Chapman, Carmen McIntyre, and Keith Pappendick was terminated from the case on February 3, 2020.

If the recommendation is adopted, summary judgment will be granted, without prejudice, in favor of each defendant except for Lia Gulick, Mari Kay Sherry, and the Pain Management Committee.  I also **RECOMMEND** that this Court **DENY** Plaintiff's motion for immediate consideration (ECF No. 20).

## II.   REPORT

### A.   Background

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the Macomb Correctional Facility ("MCF").  (ECF No. 1, PageID.2.)  In January 2018, Plaintiff developed a serious bone infection from an open wound on his ankle, requiring him to be hospitalized for two months.  (*Id.* at PageID.5.)  Because Plaintiff was allergic to common pain relievers, such as acetaminophen, Plaintiff's caregivers provided him with Ultram, a synthetic opioid, to treat his pain while he was hospitalized.  (*Id.* at PageID.6); Kaci Durbin, *Tramadol*, Drugs.com (last updated Sept. 7, 2021), https://www.drugs.com/tramadol.html.  Plaintiff was released from the hospital in April 2018, but "after a couple months" his "wound stopped healing."  (ECF No. 1, PageID.5–6.)  Plaintiff's open ankle wound caused him "excruciating pain" which he managed by continuing to take Ultram. (*Id.*)  However, the MDOC discontinued Plaintiff's Ultram prescription on July 29, 2019[3] without replacing Plaintiff's Ultram with a different

---

[3] Although Plaintiff's complaint states that the MDOC took him off of Ultram on August 5, the MDOC's response to his step two grievance states that Plaintiff was taken off of Ultram on July 29.  (*Id.*; ECF No. 26-1, PageID.201.)

pain medication.[4]  Plaintiff alleges that since discontinuing his Ultram prescription, the Pain Management Committee ("PMC")[5] has denied all his requests for pain medication. (ECF No. 1, PageID.6.)

Plaintiff first requested that the MDOC reinstate his Ultram prescription on September 11, 2019.  (ECF No. 26-1, PageID.201.)  Although Plaintiff alleges that the PMC denied this request, the MDOC asserts that this decision was instead made by the "ACMO designee," referring to the assistant chief medical officer.  (*Id.*; ECF No. 1, PageID.6.)  On November 21, Plaintiff's physician, Defendant Martino, sent a request to the PMC on Plaintiff's behalf, asking that Plaintiff be provided with pain medication.  (ECF No. 26-1, PageID.201–02.)  The PMC declined to allow Plaintiff to take pain medication, but instead recommended that he take more vitamin D.  (*Id.* at PageID.201); *see* Maria Helde-Frankling & Linda Bjorkhem-Bergman, *Vitamin D in Pain Management*, Int. J. Mol. Sci., Oct. 18, 2017, at 1, 1 ("[V]itamin D may constitute a safe, simple[,] and potentially beneficial way to reduce pain among patients with vitamin D deficiency . . . .").  Defendant Blessman states that on March 4, 2020, the PMC approved a request from Plaintiff's healthcare provider to allow Plaintiff to take Neurotonin, a pain medication, to treat is "neuropathy pain" and ankle wound; however, Plaintiff denies that he has received any

---

[4] It is not clear who ended Plaintiff's Ultram prescription.  Defendant Blessman and the MDOC's step two grievance response both suggest that this decision was made by the assistant chief medical officer ("ACMO"), but Plaintiff's complaint alleges that the Pain Management Committee took Plaintiff off Ultram.  (*Id.*; ECF No. 22, PageID.155.)

[5] The PMC is a body responsible for evaluating requests, from prisoners' healthcare providers, for pain management treatment by weighing prisoners' medical needs against prison safety concerns.  (ECF No. 22, PageID.148.)  The parties provide little information on who comprises the committee or how the committee operates.

pain medication since he was taken off Ultram.  (ECF No. 20, PageID.115; ECF No. 22, PageID.156.)

Plaintiff also suffers from osteoarthritis and a torn meniscus in the same knee, and "an arthritic condition" in his shoulders.  (ECF No. 1, PageID.6–7.)  These conditions cause Plaintiff to experience "unbelievable pain and discomfort"; however, Plaintiff alleges that the MDOC has failed to provide him with the appropriate treatment for these conditions.  (*Id.*)  Specifically, Plaintiff alleges that although his physical therapist recommended that he consult "an orthopedic surgeon" for his knee conditions, the MDOC failed to schedule any appointment.  (*Id.* at PageID.7.)  Similarly, Plaintiff alleges that the MDOC denied his medical provider's request for "an MRI of his knee," and, although Plaintiff's medical providers recommended that he receive surgery for his shoulder condition, the MDOC has not scheduled any appointment with an orthopedic specialist.  (*Id.*)

After Plaintiff was taken off Ultram, he filed a formal grievance with the MDOC on October 22, 2019.  (ECF No. 26-1, PageID.202.)  The MDOC provides a three-step internal process for prisoners to raise formal complaints.  (ECF No. 26-2, at PageID.207–10.)  At step one, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days.  (*Id.* at PageID.207.)  If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a step two grievance using the appropriate form.  (*Id.* at PageID.209.)  Similarly, if the inmate is dissatisfied with the step two response or does not receive a response for ten days after the response was due, he or she has ten days to file a step three grievance.  (*Id.* at PageID.210.)

4

Plaintiff's step one grievance requested that the MDOC provide him with pain medication for his ankle wound.  (ECF No. 26-1, PageID.202.)  The grievance stated that although his wound became reinfected, causing Plaintiff significant pain, the PMC discontinued his Ultram prescription without providing any replacement.  (*Id.*)  Moreover, the grievance alleged that the PMC declined numerous requests from Plaintiff's physician, Defendant Martino, to provide Plaintiff with pain medication.  (*Id.*)  The grievance did not mention Plaintiff's knee or shoulder conditions, and Plaintiff has filed no other grievances with the MDOC.  (*See id.* at PageID.198, 202.)

The MDOC responded to Plaintiff's step one grievance on December 9, 2019, and, dissatisfied with the MDOC's response, Plaintiff filed a step two appeal the same day.  (*Id.* at PageID.200, 203.)   However, before Plaintiff received a response to his step two grievance, he contemporaneously filed a complaint and a motion for preliminary injunctive relief in this Court.[6]  (ECF Nos. 1, 4.)  Unlike Plaintiff's grievance, the motion and the complaint both requested relief for Plaintiff's knee and shoulder conditions.  (ECF No. 1, PageID.6–7, 9; ECF No. 4, PageID.54–55.)

The MDOC denied Plaintiff's step two grievance on January 29, 2020, one week after Plaintiff filed his complaint and motion for injunctive relief.  (ECF No. 26-1, PageID.200.)  Plaintiff then filed a step three grievance which was denied on March 4, 2020.  (*Id.* at PageID.199–200.)

---

[6] Plaintiff's motion requested a preliminary injunction, or, alternatively, a temporary restraining order ("TRO").  (ECF No. 4, PageID.49, 54–55.)

This Court referred the parties to a mediation program on August 10, 2020 and denied Plaintiff's motion without prejudice, informing him that he could refile his motion if the parties failed to reach an agreement through mediation. (ECF No. 9, PageID.84; ECF No. 13, PageID.94; ECF No. 15, PageID.105.)  The parties did not reach an agreement, and Plaintiff again filed a motion for injunctive relief.  (ECF No. 17, PageID.109; ECF No. 20.)  Subsequently, each defendant, except for the PMC, moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing his complaint.  (ECF Nos. 26, 31, 40.)

### B.    Defendants' Motions for Summary Judgment

### 1.    Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists.  Fed. R. Civ. P. 56(a).  In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted).  In making its determination, a court may consider the plausibility of the movant's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof.  *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts

presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).   After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).   Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 2.     Whether Plaintiff Properly Exhausted His Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that prisoners may not bring a § 1983 action against prison officials, challenging the conditions of their confinement, without first exhausting their available administrative remedies.   42 U.S.C. § 1997e(a) (2012); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).   Further, prisoners must "properly" exhaust their administrative remedies, meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules . . . ."   *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).   Failure to exhaust administrative remedies in an affirmative defense that must be raised by the defendant.   *Jones v. Bock*, 549 U.S. 199 (2007).

Here, each defendant, except for the PMC,[7] argues that Plaintiff failed to properly exhaust his administrative remedies. Specifically, Coleman, Martino, Schmidt, Sylvie, and Blessman argue that although Plaintiff exhausted his administrative remedies after filing his complaint, this Court should award summary judgment in favor of the moving defendants because Plaintiff failed to exhaust his administrative remedies *before* filing the present lawsuit. Alternatively, these defendant, as wells as Gulick and Sherry, argue that several of Plaintiff's claims were not properly exhausted because they either raise new issues that were not addressed in his grievances, or they name defendants that were not mentioned in Plaintiff's grievances. For the following reasons, I suggest that Plaintiff's claims against Coleman, Martino, Schmidt, Sylvie, and Blessman, but not Gulick, Sherry, or the PMC, should be dismissed.

### a.  The Timeliness of Plaintiff's Grievances

Coleman, Martino, Schmidt, Sylvie, and Blessman argue that because Plaintiff failed to properly exhaust his administrative remedies before filing his complaint, his claims against these defendants, including his request for injunctive relief, should be dismissed.[8] Generally, a Plaintiff must properly exhaust his or her administrative remedies before filing a complaint in district court. *Ngo*, 548 U.S. at 89–90, 92. Because the PLRA

---

[7] Although listed as a party, Plaintiff's complaint explains that he does not bring any claims against the PMC as a distinct entity; rather, he lists the PMC as a party in his complaint as a placeholder for potential unknown members of the committee. (ECF No. 1, PageID.4–5.)

[8] Only Gulick, Sherry, and the PMC do not raise this argument. Accordingly, because this Court does not entertain arguments not raised in a party's principal brief, I suggest that these defendants have waived this argument. *See Martinez v. Comm'r of Soc. Sec.*, No. 09-13700, 2011 WL 1233479, at *2 n.1 (E.D. Mich. Mar. 30, 2011) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir.2008)); *cf. Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *4–5 (E.D. Mich. Aug. 8, 2008).

"makes exhaustion a precondition to filing an action in federal court" a plaintiff "may not exhaust administrative remedies" while his or her "federal suit" is pending. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999); *see Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). Here, Plaintiff filed his complaint on January 1, 2020; however, he did not complete the prison's internal grievance procedure until March 4, 2020. (ECF No. 1; ECF No. 26-1, PageID.199.) Accordingly, I suggest that the Court should grant summary judgment in favor of Coleman, Martino, Schmidt, Sylvie, and Blessman, without prejudice.[9] *See Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *cf. Threatt v. Williams-Ward*, No. 15-12585, 2016 WL 6653013, at *3 (E.D. Mich. Jul. 13, 2016).

### b. Whether Plaintiff's Complaint Raises New Issues

Alternatively, Coleman, Martino, Schmidt, Sylvie, and Blessman, as well as Gulick and Sherry, argue that Plaintiff failed to exhaust his administrative remedies against them because they were not named in his grievance, or because Plaintiff's complaint raises new issues that were not addressed in his grievance.

To properly exhaust a claim against prison officials, a prisoner must comply with all of a prison's procedural requirements. *Hall v. Warren*, 443 F. App'x 99, 105–06 (6th Cir. 2011); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009) (citing *Jones*, 549 U.S. at 217–19). Although the PLRA itself does not require that a Plaintiff name each defendant in his or her grievance, the MDOC's internal policies require

---

[9] Counsel for the unnamed PMC defendants conceded, incorrectly, that Plaintiff "exhausted . . . his claims against PMC . . . ." (ECF No. 40, PageID.307.) Because "exhaustion is an affirmative defense that must be pleaded and proved by the defendants," I suggest that the unnamed PMC defendants have waived exhaustion as an affirmative defense. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones*, 549 U.S. at 212).

that prisoners provide the "[d]ates, times, places[,] and names of all those involved in the issue." *Hall*, 443 F. App'x at 106 (emphasis removed); *see also Jones*, 549 U.S. at 217–18; (ECF No. 26-2, PageID.207.)  The MDOC policy also instructs prisoners to provide all relevant "facts involving the issue being grieved."  (ECF No. 26-2, PageID.207.)  Thus, under the MDOC's policies, a grievance only exhausts a prisoner's administrative remedies as to the individuals and issueThes identified in the grievance—a prisoner may not raise entirely new issues in his or her complaint. *Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 2208560, at \*11 (E.D. Mich. 2019), *report and recommendation adopted by Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 1147023 (2019) (citing *Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002)).

Courts have consistently found that prisoners raise "new issues" before the district court when they assert entirely new claims arising out of either a distinct cause of action or an unrelated series of events.  *See, e.g.*, *Ford*, 49 F. App'x at 585 (holding that a plaintiff raised a new issue before the district court by alleging different constitutional violations, arising out of the same conduct, than what were alleged in his grievances); *Baldridge-El v. Gundy*, 238 F.3d 419 (6th Cir. 2000) (holding that a plaintiff raised new issues by referring to events that were not mentioned in his grievance).

The PLRA itself requires that each issue raised in a Plaintiff's complaint be fully exhausted.  *See Jones*, 549 U.S. at 220 ("[N]o unexhausted claim may be considered."); 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted.")  This is because "[t]he point of requiring exhaustion is to flag problems for prison officials and permit them to expeditiously resolve the issues."

*Burley*, 2019 WL 2208560, at *11 (citing *Jones*, 549 U.S. at 219).  Thus, where a Plaintiff asserts an issue for the first time at the district court, it deprives prison officials of an opportunity to resolve the issue internally.  *See id.*

Here, Plaintiff raises new issues that were not addressed in his grievance.  Plaintiff's step one grievance alleged only that the PMC prohibited Plaintiff from taking Ultram and that the PMC denied several requests by Martino to provide him with Ultram.  (ECF No. 26-1, PageID.202.)  In his complaint, however, Plaintiff brought claims against Martino for failing to provide Plaintiff with knee surgery and treatment for his shoulders, knee, and ankle.  (ECF No. 1, PageID.3–4.)  Plaintiff also brought a new claim against Sylvie for denying Plaintiff an MRI of his knee.  (*Id.* at PageID.4.)  Because these claims were not addressed in Plaintiff's grievance, they have not been properly exhausted, and should be dismissed.

Plaintiff's complaint also alleges that Blessman and Coleman denied his "request for renewal of . . . Ultram." (*Id.* at PageID.3.)  Although both defendants argue otherwise, this is the same issue raised in Plaintiff's grievance.  While the grievance did not refer to either defendant by name, it alleged that the PMC denied Plaintiff pain medication, and Blessman has conceded that "in his role as" the assistant chief medical officer, he "sits on the MDOC's Pain Management Committee."  (ECF No. 26-1, PageID.202; ECF No. 22, PageID.148.)  Plaintiff alleges that Coleman holds the same position as Blessman, which implies that Coleman also sits on the PMC.  (ECF No. 1, PageID.3.)  Both the grievance and the complaint refer to the same denial of pain medication.

Martino and Schmidt also argue that Plaintiff raised new issues in his complaint by alleging that they failed to provide him with pain medication.  However, these claims concern the same events underlying Plaintiff's grievance.  Indeed, both the grievance and the complaint mention that Martino attempted, but failed, to get pain medication for Plaintiff.  (*Compare* ECF No. 1, PageID.3–4, *with* ECF No. 26-1, PageID.202.)  Similarly, Plaintiff alleges that Schmidt "failed to . . . [e]nsure" that Plaintiff was provided with pain medication when she was "contacted" following "Plaintiff's Step I grievance." (ECF No. 1, PageID.4.)  Plaintiff's claim against Schmidt arises out of the MDOC's denial of Plaintiff's pain medication—the issue addressed in Plaintiff's grievance.

Blessman, Gulick, and Sherry argue that Plaintiff has not properly exhausted his claims against them because they were not named in Plaintiff's grievance.  Indeed, the only parties named in Plaintiff's grievance are Martino and the PMC.  (ECF No. 26-1, PageID.202.)  However, courts in this circuit have repeatedly held that "there is no substantive difference between identifying a defendant by name . . . , position, or other information." *Mahaffey v. Buskirk*, No. 13-14646, 2014 WL 2864099, at *12 n.13 (E.D. Mich. June 24, 2014).  By naming the PMC, Plaintiff has adequately identified all individuals on the committee. *Cf. Skinner v. Unknown Grandson*, No. 05–70556, 2006 WL 1997392, at *6 (E.D. Mich. July 14, 2006) (citing *Thomas v. Woolum*, 337 F.3d 720, 722–23 (6th Cir. 2003)).  This includes Blessman and Coleman who are both members of the PMC.  (*See* ECF No. 22, PageID.148.)

However, the Court lacks enough information to determine whether any of the remaining defendants are members of the PMC.  Plaintiff explains in his complaint that he

does not know which individuals comprise the PMC, and although the defendants carry the burden of proof, they do not provide any information regarding who sits on the committee. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012); (ECF No. 1, PageID.4–5.) Construing the facts in the light most favorable to Plaintiff, the nonmoving party, these Defendants could be on the PMC, and therefore would be properly named in Plaintiff's grievance. *See Matsushita*, 475 U.S. at 587.

Only Gulick and Sherry argue that they are not members of the PMC. Both defendants summarily claim that they are not members of the PMC and provide the court with an organizational chart, establishing that Gulick and Sherry work for the MDOC as the deputy director of the Budget and Operations Administration and the administrator of the Bureau of Health Care Services, respectively. (ECF No. 46, PageID.348 & n.1.) But neither defendant explains why their positions prevent them from being involved with the PMC. Although both defendants hold high-level positions in the MDOC, this does not preclude them, per se, from involvement in the PMC. And, although both defendants assert that they are not "medical providers," the PMC does not provide medical care. (*Id.* at PageID.348; ECF No. 22, PageID.147.) Rather, it is responsible for balancing inmates' medical needs with prison safety concerns. (ECF No. 22, PageID.147.) Thus, members of the committee need not necessarily be medical providers. Without any information on how which individuals make up the PMC, the court cannot infer that Gulick or Sherry are not involved with the PMC.

Similarly, because the defendants have not provided any evidence about who comprises the PMC, the Court cannot conclude that there are no genuine disputes of

14

material fact regarding whether any of the other named defendants are members of the PMC. *See Matsushita*, 475 U.S. at 587; *Surles*, 678 F.3d at 456. Each defendant was allegedly involved with Plaintiff's medical care, and it is possible for any of them to be members of the PMC.

Accordingly, if a reviewing Court finds that Coleman, Martino, Schmidt, Sylvie, and Blessman's motions for summary judgment should not be granted based on Plaintiff's failure to exhaust his administrative remedies before filing his complaint, then the Court should still grant summary judgment in favor of Sylvie and Martino, except insofar as Plaintiff alleges that Martino failed to provide him with pain medication.

### C.   Plaintiff's Motion for Injunctive Relief

#### 1.   Whether the Court Can Enjoin Nonparties While Plaintiff Files a New Complaint

Although Plaintiff's claims against Coleman, Martino, Schmidt, Sylvie, and Blessman should be dismissed, Plaintiff argues that the Court may nonetheless enjoin these defendants and require that they provide medical treatment while Plaintiff refiles his complaint. (ECF No. 36, PageID.263–64; ECF No. 44, PageID.338–39.) The Sixth Circuit has not addressed whether a prisoner may request a preliminary injunction or a TRO before exhausting his or her administrative remedies, and federal courts are divided on this issue. *Compare Jackson v. District of Columbia*, 254 F.3d 262, 267–68 (D.C. Cir. 2001) *and Tvelia v. New Hampshire Dept. of Corrs.*, No. 03-537, 2004 WL 180037, at *2 (D. N.H. Jan. 27, 2004), *with West v. Polk*, No. 5:19cv174, 2021 WL 5411957, at *1–2 (E.D. Tex. Sept. 7, 2021). Indeed, some courts have held that even where a prisoner has not yet filed

a complaint in federal court, the court may nonetheless grant a request for a preliminary injunction or TRO while the prisoner exhausts his or her administrative remedies. *E.g.*, *Simmons v. Stokes*, No. 2:09-CV-2406, 2010 WL 2165358, at *4 (D. S.C. May 26, 2010). Under this approach, the Court could enjoin the dismissed defendants and order that they provide Plaintiff with medical care while Plaintiff files a new complaint with this court.

Federal courts only possess jurisdiction where it is granted by Congress—federal jurisdiction is never presumed. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (explaining that federal courts "possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree"); *see also Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 888 (2d Cir. 1981) (Markey, J., dissenting). Thus, to grant Plaintiff's motion for injunctive relief, there must be some statutory basis for the court to enjoin the dismissed defendants before Plaintiff brings an action against them.

But neither the PLRA nor 28 U.S.C. § 1331 grant federal courts jurisdiction over matters not presently before the court. Indeed, § 1331 grants only district courts jurisdiction over "action[s]" that arise under federal law; however, there is no action against the dismissed defendants. *See Action*, Black's Law Dictionary (11th ed. 2019) (quoting 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885) ("An action has been defined to be an ordinary proceeding. . . by which one party prosecutes another party . . . .").

Nor does the PLRA provide this Court with jurisdiction to enjoin nonparties. In *Nelson v. Barnhart*, the District of Colorado held that it could not grant preliminary

injunctive relief for a prisoner until after the prisoner had exhausted his administrative remedies.  454 F. Supp.3d 1087, 1092–93 (D. Colo. Apr. 16, 2020).  The court reasoned that by enjoining prison officials before the prisoner has exhausted his or her administrative remedies, it would circumvent the PLRA's mandatory exhaustion requirement.  *Id.*  Indeed, the PLRA prohibits prisoners from bringing "any action" without first exhausting his or her administrative remedies, and the PLRA only limits its exhaustion requirement by specifying that a prisoner's administrative remedies must be "available."  *Id.* at 1092.  Moreover, the Supreme Court "has reject[ed] every attempt to deviate from" the PLRA's "textual mandate."  *Id.* (internal quotation marks omitted) (quoting *Ross v. Blake*, 578 U.S. 632, 639–40 (2016)).  Thus, the District of Colorado concluded that the PLRA was intended to prohibit all actions, including preliminary injunctions and TRO's, where a prisoner had not first exhausted his or her administrative remedies.  *Id.*

The PLRA does not permit courts to issue injunctive relief while a prisoner exhausts his or her administrative remedies.  Rather than allowing prisoners to sue officials immediately whenever a cause of action arises, the PLRA mandates that all prisoners must exhaust their administrative remedies before bringing a federal lawsuit.  42 U.S.C. 1997e(a).  The purpose of this policy is to allow prison officials to resolve disputes internally before they are subjected to a lawsuit.  *Jones*, 549 U.S. at 219.  Yet, not only does the PLRA provide no explicit exceptions to its mandatory exhaustion requirement, but a preliminary injunction, issued before a prisoner exhausts his or her administrative remedies, would thwart the statute's underlying policy by allowing the court to intervene in a matter before the prison has attempted to resolve the matter internally.  *See id.*; *Jerome*

*v. Viviano Food Co., Inc.*, 489 F.2d 965, 965–66 (6th Cir. 1974) (criticizing an appellant in a Title VII action for requesting a TRO before exhausting her administrative remedies).

Moreover, the PLRA's history suggests that Congress did not intend to allow courts to circumvent its exhaustion requirement by issuing injunctions while prisoners exhaust ther administrative remedies. The PLRA's precursor, the Civil Rights of Institutionalized Persons Act ("CRIPA"), required exhaustion only where it was "plain, speedy, and effective." *Ross*, 578 U.S. at 640–41. Believing that "CRIPA proved inadequate to stem the then-rising tide of prisoner litigation," Congress replaced it with the PLRA, and removed the requirement that administrative remedies must be "plain, speedy, and effective." *Id.* Thus, Congress made exhaustion mandatory, even where it was neither "speedy" nor "effective." *Id.* Plaintiff's conclusion that courts may enjoin prison officials while prisoners exhaust their administrative remedies seems incongruous with Congress's intent to shield prison officials from litigation until they have had an opportunity to resolve disputes internally. *See id.* Although it may be a wise policy to allow courts to issue these types of injunctions, this is not the policy that was passed by Congress. *See Kokkonen*, 511 U.S. at 377.

If neither § 1331 nor the PLRA provide the Court with jurisdiction to grant Plaintiff's injunction, then what does? The D.C. Circuit has suggested that the All Writs Act provides federal courts with jurisdiction to enjoin prison officials while prisoners exhaust their administrative remedies. *Jackson*, 254 F.3d at 268 (citing *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987) (relying on the All Writs Act to hold that federal courts may enjoin employers from retaliating against an employee while he exhausted his

administrative remedies under Title VII)).  The All Writs Act grants all federal courts the power to issue writs, including preliminary injunctions and TROs, which are "necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651(a); *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603 (1966).

An injunction under the All Writs Act is intended not "to preserve the status quo between parties" pending a final decision, but instead is intended to protect the court's "ability to reach and resolve the merits" of the . . . suit before it."  *In re Baldwin Corp.*, 770 F.2d 328, 338–39 (2d Cir. 1985).  Although the All Writs Act does not provide an independent basis for jurisdiction, a court may issue injunctions under the All Writs Act over cases where it merely has prospective jurisdiction.  *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 24–25 (1943).  In other words, where a court does not have jurisdiction over a matter, but would if the matter were appealed, the court may properly issue an injunction under the Act.  Samuel I. Ferenc, Note, *Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act*, 118 Colum. L. Rev. 127, 138 (2018).

Unlike an All Writs Act injunction, an injunction under Federal Rule of Civil Procedure 65 is intended to preserve the status quo between the parties until the court reaches a final decision on the merits.  While courts may issue an All Writs injunction in cases where it merely has prospective jurisdiction, a Rule 65 injunction only applies to cases presently before the court.  *In re Baldwin Corp.*, 770 F.2d at 338–39.  Indeed, not only would a court require jurisdiction under § 1331 to issue a Rule 65 injunction, but Rule 65 itself limits its application to the "part[ies]" and their agents, suggesting that it only

applies where an action is presently before the court.  *See* Fed. R. Civ. P. 65(d)(2).  Thus, because Plaintiff's claims against each defendant, except for Gulick, Sherry, and the PMC, should be dismissed, this Court cannot enjoin the dismissed defendants if the injunction is derived from Rule 65 rather than the All Writs Act.[10]

Although courts generally may not grant an All Writs injunction simply to preserve the status quo, the Supreme Court has held that federal courts may grant "status quo" injunctions to stay an administrative agency's decision pending appeal.  Ferenc, *supra*, at 142–43.  This is because in the administrative setting, district courts review the lawfulness of an administrative agency's decision. *See id.* at 127.  Accordingly, courts "should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of [an agency's] determination which may later be found to have been wrong."  *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 9 (1942).  Indeed, judicial review of an agency's error would be "an idle ceremony if the situation were irreparably changed before" the court could correct the agency's error.  *Id.*  Thus, by staying an agency's final decision, a court can protect its appellate jurisdiction over the agency's decision and by ensuring that it can reach a meaningful decision on the merits.  *See id.*; *Dean Foods*, 384 U.S. at 605.

As Plaintiff correctly notes, the D.C. Circuit has extended this rule, in dicta, to PLRA claims, stating that federal courts may issue All Writs injunctions to preserve the

---

[10] Of course, even under Rule 65, this Court may enjoin nonparties acting "in active concert and participation" with a party or its agent.  *Id.*  Though no longer parties, the dismissed defendants may be enjoined insofar as they act in "concert or participation" with the remaining defendants.  *See id.*

status quo while prisoners exhaust their administrative remedies. *Jackson*, 254 F.3d at 268. Reading the *Scripps-Howard* line of cases broadly, the D.C. Circuit found no distinction between judicial review of an agency action and PLRA lawsuits. *Id.* Implicitly concluding that the All Writs Act applied to PLRA lawsuits, the court explained that because "the PLRA contains nothing expressly foreclosing courts from exercising their traditional equitable power to issue injunctions to prevent irreparable injury pending exhaustion" courts may exercise their "inherent power to" maintain the status quo while a prisoner exhausts his or her administrative remedies. *Id.*; *see Dean Foods*, 384 U.S. at 608 (holding that when reviewing an administrative agency's action, a court may presumptively issue an All Writs injunction unless "explicit[ly]" prohibited by statute).

However, I suggest that this Court may not issue an All Writs injunction. As the Second Circuit explained, the purpose of an All Writs injunction is to protect "the court's ability to reach and resolve the merits of the federal suit before it.*"* *In re Baldwin*, 770 F.2d at 338–39. Injunctions designed to simply preserve the rights of the parties are properly considered under Rule 65. *Id.* at 338.

Here, a preliminary injunction would not preserve this Court's ability to reach a decision on the merits. Plaintiff asks this court for monetary damages and a permanent injunction reinstating his pain medication and requiring treatment for his shoulder and knee conditions, but these remedies can be granted regardless of whether Plaintiff is awarded a preliminary injunction. An injunction is not necessary to prevent the underlying circumstances from changing "irreparably" such that Plaintiff's requested permanent injunction would become "meaningless." *Cf. Scripps-Howard Radio*, 316 U.S. at 9.

Accordingly, I suggest that this Court may not grant an injunction against the dismissed parties because neither the All Writs Act, nor any other statute, grants this Court jurisdiction to enjoin these former defendants.

### 2. The Merits of Plaintiff's Motion for Injunctive Relief

Although the Court may not enjoin the parties who are no longer defendants, the court may still grant an injunction against Sherry, Gulick, or the PMC.

The moving party carries the burden of proving that he or she is entitled to a preliminary injunction or a TRO. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Because preliminary injunctive relief is an "extraordinary remedy," courts are hesitant to grant preliminary injunctive relief and will only do so if an injunction is "clearly" warranted. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Moreover, given the "unique nature of a prison setting," where a prisoner moves to enjoin "prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014) (citing *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir.1988)).

When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).   No one factor is controlling, and except for the movant's risk of irreparable injury, no single factor is required to obtain injunctive relief. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–03 (6th Cir. 1982) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Instead, these factors must be "carefully balanced" by the district court. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261 1263 (6th Cir. 1985).  Further, although a movant with "no likelihood of success on the merits" generally cannot obtain injunctive relief, a movant need not show an "overwhelming" probability of success on the merits. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. Aug. 22, 2000); *Sellers v. U. of Rio Grande*, 838 F. Supp.2d 677, 679 (S.D. Ohio 2012).

The last two factors are not seriously implicated under these facts.  The requested injunction could not significantly impact the public interest and it would pose little risk of causing harm to others.  To be sure, as Coleman, Martino, Schmidt, and Sylvie argue, compliance with a preliminary injunction would "divert[]" resources from other prisoners who "need medical care."  (ECF No. 23, PageID.172.)     But the MDOC would expend relatively few resources to simply provide Plaintiff with pain medication.  Perhaps a greater risk to others would come from the MDOC introducing Ultram, a synthetic opioid, into a prison.  Indeed, this type of risk is exactly that which the PMC is responsible for balancing against the medical needs of its inmates.  (ECF No. 22, PageID.147.)  Still, Plaintiff has taken Ultram for months in prison and he is surely one of several prisoners in Michigan prisoners who have taken prescription opioids under the supervision of prison officials.

(*See id.* at PageID.155.)   Surely, the MDOC has policies in place to control the use of prescription medications within its prisons and can mitigate the risk posed by these drugs.

I also suggest that Plaintiff has demonstrated an irreparable harm.   An irreparable injury is one that cannot be remedied with monetary damages.   *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).   Plaintiff alleges that the MDOC has failed to adequately treat various injuries, but because he is incarcerated and not capable of obtaining his own medical care, only an injunction can remedy these injuries.   *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) (holding that pain may constitute an irreparable injury).

However, Plaintiff's likelihood of success on the merits weighs greatly against the issuance of an injunction.   Here, Plaintiff requests an injunction ordering the Defendants to (1) provide an effective pain medication; and (2) to provide Plaintiff with treatment for his ankle, shoulders, and knee.   However, Plaintiff has cannot succeed on the merits with on his claims regarding his shoulders and knee because this Court should enter summary judgment in favor of the defendants who Plaintiff alleges are responsible for denying treatment for these conditions.   To prevail in a § 1983 claim, a Plaintiff must show that the defendant was "personally involved in the unconstitutional action."   *Pineda v. Hamilton County, Ohio*, 977 F.3d 483, 491 (6th Cir. 2020).   But neither Gulick, Sherry, nor the PMC—the only remaining defendants—were involved in the MDOC's failure to treat Plaintiff's knee or shoulders.   The PMC does not "participate" in prisoners' "medical treatment"; rather, the PMC is responsible for determining "appropriate pain management

. . .[,] when requested by a prisoner's healthcare provider," by "weigh[ing] pain management needs . . . against prison policy and safety considerations." (ECF No. 22, PageID.147.) Likewise, Gulick, as the director of Budget and Operations, and Sherry, as the administrator of Health Care Services, likely would not have been personally involved in Plaintiff's healthcare.

Instead, Plaintiff alleges that Stacie Sylvie, a Corizon employee, denied his physical therapist's request for an MRI of his knee. (ECF No. 1, PageID.4.) Plaintiff also broadly alleges that he was never treated for his shoulder condition, but he does not allege that any of these three defendants were responsible for this decision. (*Id.* at PageID.7.) Accordingly, because Plaintiff cannot show that either Gulick, Sherry, or the PMC were personally involved in these injuries, he cannot prevail on the merits of this Eighth Amendment claim, and his request for an injunction, requiring that the Defendants provide treatment for his knee, ankle, and shoulder injuries, should be denied. *See Gonzales*, 225 F.3d at 625; *Johnson v. City of Rock Island, Ill.*, No. 4:11-cv-4058, 2012 WL 5425605, at *2 (C.D. Ill. Nov. 6, 2012).[11]

Although the PMC was personally involved in the decision to take Plaintiff off Ultram, Plaintiff is unlikely to succeed on the merits of this claim.[12]

---

[11] While many courts are hesitant to issue "mandatory" injunctions, such as those here, which require an affirmative action from the nonmoving party, the Sixth Circuit sees no "meaningful" distinction "between mandatory and prohibitory injunctive relief." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998). Accordingly, in the Sixth Circuit, requests for mandatory injunctions are not held to a heightened standard. *Id.*

[12] The extent to which the PMC was involved in the decision to take Plaintiff off Ultram is not clear. The PMC denied Plaintiff's physician's request on November 21, 2019, to provide Plaintiff with pain medication. (ECF No. 26-1, PageID.201.) However, an assistant chief medical officer ("ACMO") made

The Eighth Amendment protects all people from "cruel and unusual punishments." U.S. Const. amend. VIII.   While "[t]he Constitution 'does not mandate comfortable prison[s],'" it also does not "permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted).   Indeed, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well[-]being."  *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020).  This includes a duty to provide for the prisoner's "basic human needs," including "food, clothing, shelter, medical care, and reasonable safety."   *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

An official violates the Eighth Amendment where he or she acts with "'deliberate indifference' to an inmate's 'serious medical needs.'"  *Plair v. Holmes*, No. 1:19-cv-815, 2020 WL 8187989, at *5 (W.D. Mich. Dec. 29, 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)).   For an inmate to show that prison officials violated the Eighth Amendment by denying medical care, the inmate must show (1) that he or she was deprived of an objectively serious medical need, and (2) that the defendant knew "of and

---

the initial decision to wane Plaintiff off of Ultram, and denied Plaintiff's first request to reinstate his Ultram prescription.  (*Id.*)  Although ACMOs apparently sit on the PMC, the parties do not clarify whether the ACMOs, Coleman and Blessman, acted independently of the PMC when they made these decisions.  (ECF No. 22, PageID.147.)  Further, the parties dispute whether Gulick and Sherry are members of the PMC. (ECF No. 46, PageID.348.)

disregard[ed] an excessive risk to [his or her] health or safety." *Farmer*, 511 U.S. at 834, 837; *Rhinehart v. Scutt*, 894 F.3d 721, 737–38, (6th Cir. 2018).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). An inmate satisfies this prong if he or she receives no treatment for a serious medical need. *Rhinehart*, 894 F.3d at 737. However, if an inmate's condition is "minor or non-obvious," or the prisoner has received medical treatment, but alleges that the prison did not adequately treat his or her condition, then the prisoner must show that the treatment he or she received was so inadequate "as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quotation marks omitted) (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). This often requires "'expert medical testimony . . . showing the medical necessity for' the desired treatment and 'the inadequacy of the treatments' the inmate received." *Id.* (quoting *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)). It will also often require the plaintiff to "place verifying medical evidence in the record to establish the detrimental effect of the" inadequate medical treatment. *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

Here, because Plaintiff contests the adequacy of his treatment, he must overcome this high bar. Plaintiff was placed on Ultram after he was hospitalized for his ankle wound while in the custody of the MDOC. After Plaintiff was released from the hospital, MDOC officials decided to continue Plaintiff's Ultram prescription, on a temporary basis, while

Plaintiff recovered from his surgery.  (ECF No. 22, PageID.155.)  The ACMO, a physician, decided to wane Plaintiff off of Ultram.  (*Id.* at PageID.147, 155; ECF No. 26-1, PageID.201.)  After reviewing Plaintiff's physician's request for pain medication, the PMC recommended that Plaintiff consume more vitamin D.  (ECF No. 26-1, PageID.201); *see* Helde-Frankling & Bjorkhem-Bergman, *supra*, at 1.  On March 4, 2020, the PMC also provided Plaintiff with Neurontin for his "neuropathy pain and" ankle wound.  (ECF No. 22, PageID.156.)

Thus, the decision to take Plaintiff off Ultram was part of an ongoing course of treatment.  However, given the MDOC's extensive history of treatment, continuous reevaluation of Plaintiff's medical needs, and reasonable concerns over Plaintiff's long-term use of an opioid, it is unlikely that the MDOC's decision would "shock the conscience."  *Rhinehart*, 894 F.3d at 737.  To prove otherwise, Plaintiff would almost certainly need to provide some medical evidence to explain why the MDOC's decisions were inadequate, but Plaintiff has provided no such documentation so far.[13]  *Id.* at 737–38.

If Plaintiff can demonstrate that the Defendants failed to adequately treat a serious medical condition, then he must also show that they knew of, but "disregard[ed,] an excessive risk to" his "health or safety."  *Id.* at 738.  This requires showing that the Defendants acted with "deliberateness tantamount to intent to punish." *Miller*, 408 F.3d at

---

[13] To be sure, it is possible that Plaintiff could provide some evidence to demonstrate that the MDOC's treatment was inadequate.  Indeed, Plaintiff's physician, Julianne Martino, in disagreement with the MDOC, requested that the PMC allow Plaintiff to take pain medication.  (ECF No. 26-1, PageID.202.)  But even assuming that Plaintiff can provide some evidence to support his claim, it must show not just that the MDOC's treatment was inadequate, but that it was so inadequate that it was "intolerable to fundamental fairness."  *Rhinehart*, 894 F.3d at 737.  Plaintiff is unlikely to make this showing.

813.  A doctor[14] who "provides reasonable treatment, even if the outcome of the treatment is insufficient or . . . harmful" is not liable under the Eighth Amendment.  *Rhinehart*, 894 F.3d at 738.  "Accordingly, when a claimant challenges the adequacy of an inmate's treatment, 'this Court is deferential to the judgments of medical professionals.'"  *Id.* (quoting *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018)).

Because Plaintiff challenges the adequacy of his treatment, he must overcome this burdensome standard, but Plaintiff has provided the Court with no reason to question whether the PMC acted with "deliberateness tantamount to intent to punish."  *Miller*, 408 F.3d at 813; *Jones*, 569 F.3d at 265.

Given the heightened burden on plaintiffs who challenge the adequacy of medical treatment, "[c]ourts have consistently denied prisoners' requests for preliminary injunctive relief where their claims were based on their disagreement with the adequacy of treatment they received at the prison."  *Courtney v. Prison Health Servs.*, No. 10-CV-14123, 2011 WL 1532159, at *4 (E.D. Mich. Feb. 28, 2011) (first citing *Kennedy v. Potter*, 344 F. App'x 987 (5th Cir. 2009), and then citing *White v. Goff*, 348 F. Appx. 366, (10th Cir. 2009)).  Plaintiff's case is no exception.  Accordingly, I suggest that Plaintiff's motion for preliminary injunctive relief be denied.

---

[14] Although the Court does not know every member of the PMC, the committee is comprised, at least in part, by medical doctors.  (*See* ECF No. 22, PageID.147.)

## F. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **GRANT** Defendants Coleman, Martino, Schmidt, and Sylvie's motion for summary judgment (ECF Nos. 26), grant Defendants Blessman and McIntyre's motion for summary judgment (ECF No. 31), and **DENY** Defendants Gulick and Sherry's motion for summary judgment (ECF No. 40). If the recommendation is adopted, summary judgment will be granted, without prejudice, in favor of each defendant except for Lia Gulick, Mari Kay Sherry, and the Pain Management Committee. I also **RECOMMEND** that this Court **DENY** Plaintiff's motion for immediate consideration (ECF No. 20).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 26, 2022                              S/ PATRICIA T. MORRIS
                                                     Patricia T. Morris
                                                     United States Magistrate Judge