UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RONALD C. JOHNSON, | CASE NO. 2:20-cv-10147 |
| *Plaintiff*, | |
| v. | HON. GERSHWIN A. DRAIN<br>DISTRICT JUDGE |
| LIA GULICK,<br>MARI KAY SHERRY,<br>and PAIN MANAGEMENT<br>COMMITEE,[1] | HON. PATRICIA T. MORRIS<br>MAGISTRATE JUDGE |
| *Defendants*.[2]<br>_____/ | |

**REPORT AND RECOMMENDATION ON DEFENDANT
LIA GULICK, MARI KAY SHERRY, and PAIN MANAGEMENT
COMMITTEE'S MOTION FOR SUMMARY JUDGMENT (ECF No. 60)**

**I.   RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendant Gulick, Sherry, and Pain Management Committee's Motion for Summary Judgment (ECF No. 60), dismissing these Defendants **WITH PREJUDICE** and that Plaintiff's Motion for Denial of Summary Judgment (ECF No. 64) be **DENIED**.[3]

---

[1] The undersigned recognizes that the Pain Management Committee is misspelled in the docket as the "Pain Management Commitee."
[2] Defendants Heidi Washington, Willis Chapman, Carmen McIntyre, and Keith Pappendick were terminated from the case on February 3, 2020.
[3] While Plaintiff filed a self-styled "Motion" to deny Defendants' motion, the Court construes the submission as a response to Defendants' motion.

1

## II. REPORT

### A. Factual and Procedural Background

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the Macomb Correctional Facility ("MCF"). (ECF No. 1, PageID.2). His Complaint, filed January 22, 2020, makes the following allegations. In January 2018, he developed a serious bone infection from an open wound on his ankle, requiring him to be hospitalized for two months. (*Id.* at PageID.5). Because Plaintiff was allergic to common pain relievers, such as acetaminophen, his caregivers provided him with Ultram, a synthetic opioid, to treat his pain while he was hospitalized. (*Id.* at PageID.6). Plaintiff was released from the hospital in April 2018, but "after a couple months" his "wound stopped healing." (ECF No. 1, PageID.5–6). Plaintiff's open ankle wound caused him "excruciating pain" which he managed by continuing to take Ultram. (*Id.*) However, the MDOC discontinued his Ultram prescription on July 29, 2019[4] without replacing the Ultram with a different pain medication.[5] Since discontinuing the Ultram prescription, the

---

[4] Although Plaintiff's complaint states that the MDOC took him off Ultram on August 5, the MDOC's response to his step two grievance states that Plaintiff was taken off of Ultram on July 29. (*Id.*; ECF No. 26-1, PageID.201).

[5] It is not clear who ended Plaintiff's Ultram prescription. Defendant Blessman and the MDOC's step two grievance response both suggest that this decision was made by the assistant chief medical officer ("ACMO"), but Plaintiff's complaint alleges that the Pain Management Committee took Plaintiff off Ultram. (*Id.*; ECF No. 22, PageID.155).

Pain Management Committee ("PMC")[6] has denied all his requests for pain medication. (ECF No. 1, PageID.6). Plaintiff first requested that the MDOC reinstate his Ultram prescription on September 11, 2019. (ECF No. 26-1, PageID.201).

Although Plaintiff alleges that the PMC denied this request, in an earlier dispositive motion, the MDOC asserts that this decision was instead made by the "ACMO designee," referring to the assistant chief medical officer. (*Id.*; ECF No. 1, PageID.6). On November 21, Plaintiff's physician, Defendant Martino, sent a request to the PMC on Plaintiff's behalf, asking that Plaintiff be provided with pain medication. (ECF No. 26-1, PageID.201–02). The PMC declined to allow Plaintiff to take pain medication, but instead recommended that he take more vitamin D. (*Id.* at PageID.201). Former Defendant Blessman states that on March 4, 2020, the PMC approved a request from Plaintiff's healthcare provider to allow Plaintiff to take Neurotonin, a pain medication, to treat is "neuropathy pain" and ankle wound; however, Plaintiff denies that he has received any pain medication since he was taken off Ultram. (ECF No. 20, PageID.115; ECF No. 22, PageID.156).

Plaintiff alleges that he also suffers from osteoarthritis and a torn meniscus in the same knee, and "an arthritic condition" in his shoulders. (ECF No. 1, PageID.6–

---

[6] The PMC is a body responsible for evaluating requests, from prisoners' healthcare providers, for pain management treatment by weighing prisoners' medical needs against prison safety concerns. (ECF No. 22, PageID.148).

3

7). These conditions cause Plaintiff to experience "unbelievable pain and discomfort." (*Id.*) However, Plaintiff alleges that the MDOC has failed to provide him with the appropriate treatment for these conditions. (*Id.*) Plaintiff alleges that although his physical therapist recommended that he consult "an orthopedic surgeon" for his knee conditions, the MDOC failed to schedule any appointment. (*Id.* at PageID.7). Similarly, Plaintiff alleges that the MDOC denied his medical provider's request for "an MRI of his knee," and, although Plaintiff's medical providers recommended that he receive surgery for his shoulder condition, the MDOC has not scheduled any appointment with an orthopedic specialist. (*Id.*)

After Plaintiff was taken off Ultram, he filed a formal grievance with the MDOC on October 22, 2019. (ECF No. 26-1, PageID.202). Plaintiff's Step I grievance requested that the MDOC provide him with pain medication for his ankle wound. (ECF No. 26-1, PageID.202). The grievance stated that although his wound became reinfected, causing Plaintiff significant pain, the PMC discontinued his Ultram prescription without providing any replacement. (*Id.*) Moreover, the grievance alleged that the PMC declined numerous requests from Plaintiff's physician, Defendant Martino, to provide Plaintiff with pain medication. (*Id.*) The grievance did not mention Plaintiff's knee or shoulder conditions, and at the time the Complaint was filed, Plaintiff had filed no other grievances with the MDOC. (*See id.* at PageID.198, 202).

On March 31, 2022, the District Court adopted my recommendation to dismiss without prejudice Corizon Health Services, Carmen McIntyre, Ricky Coleman, Julianne Martino, Stacy Sylvie, Patricia Schmidt, and Keith Pappendick (collectively "Corizon Defendants") and Jeffrey Blessman based on Plaintiff's failure to exhaust his administrative remedies before filing suit. (ECF Nos. 26, 31, 48, 53, PageID.439). The District Court stated however that "Plaintiff is welcome to file an amended complaint joining the dismissed Defendants after he properly completes the MDOC internal grievance process." (ECF No. 53, PageID.440).

The Court further adopted my recommendation that Gulick and Sherry's motion for summary judgment on the basis of exhaustion be denied. (ECF Nos. 40, 48, PageID.439). As to Plaintiff's request for immediate injunctive relief, the District Court adopted my findings regarding these Defendants:

> [Plaintiff's] allegations regarding Defendants Gulick and Sherry . . . do not rise to the level of criminal recklessness at this time. With the record presently before the Court, it is not clear what role Defendants Gulick and Sherry played in these denials [of pain medication], and thus whether they can be held liable for Plaintiff's alleged constitutional violations. Plaintiff has not provided any evidence that Gulick or Sherry "perceived facts from which to infer substantial risk" to him, let alone that they drew the inference and then disregarded it. *Rhinehart v. Scutt*, 894 F.3d 721, 738, (6th Cir. 2018). . . . Plaintiff states his medical provider's requests for orthopedic consultation, an MRI, and a CT scan were denied by the PMC. ECF No. 51, PageID.403-04. Thus, as Deputy Director of the Budget and Operations Administration and Administrator of the Bureau of Health Care Services, it is entirely possible that Gulick and Sherry denied the requests for funding based on the PMC's denial of treatment. If that is the case, neither Gulick nor Sherry can be deemed "*personally* at fault" or to have "*caused* the

5

> injury." *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (emphasis in original). As the Magistrate Judge discussed, both Gulick and Sherry summarily deny they are members of the PMC, but there is insufficient evidence in the record for the Court to make a determination one way or another. *See* ECF No. 48, PageID.367.

(ECF No. No. 53, PageID.438-439).

**B. The Defendants' Exhibits to the Present Motion**

**1. Affidavit of Lia Gulick**

Defendant Gulick's affidavit is appended to the summary judgment motion as Exhibit A. She states that she is employed by the MDOC in Lansing, Michigan as the Deputy Director of Budget and Operations Administration. (ECF No. 60-2, PageID.483, ¶ 1). Her position within the MDOC is administrative and supervisory, with "oversight responsibilities of the Budget and Operations Administration includ[ing] planning, developing and implementing all personnel policies and programs, Budget and Fiscal Management, Legal Affairs, Training, Professional Development and Recruitment, Research and Planning, and Labor Relations which includes Alcohol and Drug Testing of employees." (*Id*. at PageID.484, ¶ 3). She states that she has "no personal, individual involvement with the medical care of MDOC prisoners (*id.*, ¶ 4), and "had no personal involvement with, nor any oversight of, the medical care of Plaintiff Johnson #156768. (*id.*, ¶ 5). She states further that she is neither involved with, nor is she a member of the MDOC Pain

6

Management Committee (*id.*, ¶ 6), and that she "had no personal involvement with any decisions the PMC made regarding [Plaintiff's] pain medication." (*Id.*, ¶ 7).

### 2. Affidavit of Marti Kay Sherry

Defendant Sherry's affidavit is appended to the summary judgment motion as Exhibit B. She states that she is employed by the MDOC in Lansing "as the Administrator of Bureau of Health Care Services, which is part of the Correctional Facilities Administration within MDOC." (ECF No. 60-3, PageID.487, ¶ 1). Her position is administrative, and she is "responsible to set and execute the strategic direction for the Bureau of Health Care Services to maximize health outcomes of prisoners under the jurisdiction of the MDOC." (*Id*. at PageID.488, ¶ 3). She states that as an Administrator, she has "no personal, individual involvement with the medical care of MDOC prisoners," and had "no personal involvement with nor was involved in the medical care of Plaintiff Johnson." (*Id*. at PageID.489, ¶¶ 4-5). She is not involved with, nor is she a member of the PMC, and had no personal involvement with any PMC decisions regarding Plaintiff's pain medication. (*Id*, ¶¶ 6-7).

### 3. Plaintiff's Deposition

Plaintiff's deposition is appended to Defendants' motion as Exhibit C. He testified that as far as he knows, Defendant Gulick was never personally involved in his medical care. (ECF No. 60-4, PageID.497). He stated that he has never spoken

7

with Gulick, and does not even know her. (*Id.*). When asked about Gulick's involvement, he testified as follows:

> Q: Okay. Have you ever kited her?
>
> A: No.
>
> Q. Have you ever had any interactions with her whatsoever?
>
> A: No.
>
> Q: All right. So she hasn't been personally involved in you medical care at all; right?
>
> A: Not that I know of. (*Id.*).

As to Defendant Sherry, Plaintiff likewise testified that he had never spoken with her, kited her, or had any interactions with her, and that she was not personally involved in his medical care in any way. (*Id.*). He also testified that he did not know whether or not Gulick or Sherry were on the PMC. (*Id.*).

In Plaintiff's motion for denial of summary judgment, he acknowledges that "[b]oth Gulick and Sherry provide affidavits in their motion for summary judgment, however, names of members of the PMC have yet to be established or even offered by Defendants . . ." (ECF No. 64, PageID.517). However, he provides no evidence to refute present Defendants' denial that they were members of the PMC or had any involvement in Plaintiff's medical care.

8

### C. Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D. Analysis

**1. Defendants Gulick and Sherry**

The plaintiff in a prisoner civil rights case brought under 42 U.S.C. § 1983 must show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir. 1984). *Bellamy* held that it must be shown that a supervisor "actively participated in or authorized" the challenged conduct. Mere failure to act does not amount to personal involvement. *Shehee v. Lutrelle* 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)). Moreover, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity).

11

Defendants Gulick and Sherry are administrators, not doctors. They work in Lansing, not at the Macomb Correctional Facility. Their statements that they had no involvement in prisoner medical care in general or Plaintiff's medical care specifically is corroborated by Plaintiff's own deposition testimony. Because there is no evidence that they were personally involved in the events underlying Plaintiff's Eighth Amendment claim, they are entitled to summary judgment.

In addition, insofar as they are sued in their official capacities, Gulick and Sherry are protected by Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 23 (1991) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.").[7]

**2. The Pain Management Committee**

Under the Eleventh Amendment, State departments or subdivisions are immune from federal lawsuits. *Will*, 491 U.S. at 71. The Sixth Circuit has specifically held that the MDOC is immune under the Eleventh Amendment from federal civil rights suits brought under § 1983. *See Harrison v. Michigan*, 722 F.3d

---

[7] The State of Michigan has not waived sovereign immunity of consented to § 1983 suits in federal court. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

768, 777 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *see also Minley v. Pierce*, 2019 WL 5485235, at *3 (W.D. Mich., Oct. 25, 2019)(Maloney, J.) (Because "[t]he Pain Management Committee is simply a subdivision of the MDOC," it is protected by Eleventh Amendment immunity).

The motion for summary judgment should therefore be granted to the Pain Management Committee.

### E. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **GRANT** Defendant Gulick, Sherry, and Pain Management Committee's Motion for Summary Judgment (ECF No. 60), dismissing these Defendants **WITH PREJUDICE,** and that Plaintiff's Motion for Denial of Summary Judgment (ECF No. 64) be **DENIED**.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The

13

parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 8, 2022          s/ PATRICIA T. MORRIS
                                Patricia T. Morris
                                United States Magistrate Judge